## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| VERTIS HOLDINGS, INC., et al., | : | Case No. 12-12821 (CSS) |
| | : | |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------x

| | | |
|---|---|---|
| VERTIS HOLDINGS, INC., VERTIS, INC., | : | |
| ACG HOLDINGS, INC., WEBCRAFT, LLC, | : | |
| AMERICAN COLOR GRAPHICS, INC., | : | |
| VERTIS NEWARK, LLC, MAIL | : | |
| EFFICIENCY, LLC, AND 5 DIGIT PLUS, | : | |
| LLC, | : | |
| | : | |
| Plaintiffs, | : | Adv. Proc. No. 13-50003 (CSS) |
| | : | |
| v. | : | |
| | : | |
| JAY SCHILLER, | : | **Re: Adv. D.I. 55** |
| | : | |
| Defendant. | : | |

------------------------------------------------------------x

### DEBTORS' RESPONSE TO "ORDER REGARDING RULE TO SHOW CAUSE"

Vertis Holdings, Inc., Vertis, Inc., ACG Holdings, Inc., Webcraft, LLC, American Color Graphics, Inc., Vertis Newark, LLC, Mail Efficiency, LLC, and 5 Digit Plus, LLC, as debtors and debtors in possession in the above-captioned chapter 11 cases and as plaintiffs in the above-captioned adversary proceeding (collectively, the "Debtors"), by and through their undersigned counsel, submit this response (the "Response") to this Court's *Order Regarding Rule to Show Cause*, dated May 22, 2013 [Adv. D.I. 55] (the "Order to Show Cause"[1]). In support of the Response, the Debtors respectfully represent to the Court as follows:

---

[1] The Debtors are mindful that the Order to Show Cause provides that "… any party in support of the sealing or unsealing of the above listed documents should file a written response and / or objection **under seal** on or before June 17, 2013." See Order to Show Cause at p. 2 (emphasis supplied). Because, (Continued)

## PRELIMINARY STATEMENT[2]

The Debtors believe that the pleadings and other documents (collectively, the "Confidential/Defamatory Information") listed in the Order to Show Cause should remain under seal.[3]  The Confidential/Defamatory Information includes false, defamatory, and confidential information that required protection from disclosure pursuant to section 107(b) of the Bankruptcy Code at the time that the Sealing Orders were entered and continue to require protection from disclosure now.  In short, the Confidential/Defamatory Information is no less false, defamatory, or commercially sensitive now than it was at the time that the Sealing Orders were entered.  Moreover, the Settlement Agreement and this Court's order approving the same requires, independently from the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, that certain of the Confidential/Defamatory Information remain shielded from public disclosure or dissemination.

The Debtors filed the Sealing Motions with the Court, provided broad notice of the same, and no party --- including Defendant who now urges the Court to unseal the Confidential/Defamatory Information --- objected or voiced any formal opposition to the entry of the Sealing Orders.  The Sealing Orders have all long ago become final and non-appealable, and no party, including Defendant, who received notice of the Sealing Motions or the Sealing Orders ever filed a motion seeking reconsideration of the Sealing Orders or took a timely appeal of any

---

however, the Debtors have taken care to ensure that no confidential information is disclosed in this Response, the Debtors are not seeking to file the Response under seal.

[2] Capitalized terms used, but not otherwise defined, in the preliminary statement section of this Response shall be given the same meanings ascribed to them elsewhere in the Response.

[3] It is worth noting that the majority of the Confidential/Defamatory Information has been selectively and surgically redacted from various papers filed in the Adversary Proceeding while, at the same time, leaving as much information and as many documents as possible (i.e., everything other than the Confidential/Defamatory Information) available for inspection in the public record.

of the Sealing Orders.  Moreover, no party has filed a motion pursuant to Bankruptcy Rule 9024 seeking relief from the Sealing Orders, nor do the Debtors believe that any party could meet the heavy burden to sustain such relief in connection with the Sealing Orders.

Consequently, the Debtors believe that the Sealing Orders should remain in full force and effect and that the Confidential/Defamatory Information should remain properly protected from disclosure.

## BACKGROUND

### A.    General Background

1.      On October 10, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code").  The Debtors continue to manage their affairs as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  On October 12, 2012, this Court entered an order directing joint administration of the Debtors' chapter 11 cases for procedural purposes only under lead Case No. 12-12821 (CSS) (Bankr. D. Del.) (the "Main Bankruptcy Case") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

2.      On October 19, 2012, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code.

3.      As of the Petition Date, the Debtors were a leading provider of marketing communication services through two reportable business segments: (i) Inserts, the Debtors' largest business line, which offered offset print advertising, including advertising inserts,

newspaper specialty sections, and print products delivered through magazines, newspapers, and other publications; and (ii) Direct Marketing, which offered highly customized direct mail, one-to-one marketing programs and mailing management products and services. For the year ended December 31, 2011, the Debtors had total revenue of approximately $1.19 billion.

4.      Additional information regarding the Debtors' businesses, their capital and debt structure, and the events leading to the filing of these chapter 11 cases is contained in the *Declaration of Jeffrey Pritchett in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 18].

5.      On December 6, 2012, the Court entered an order (see D.I. 425) authorizing and approving (i) the sale of substantially all of the Debtors' assets to Quad/Graphics Marketing, LLC ("Quad") pursuant to the terms and conditions of that certain Asset Purchase Agreement, dated October 10, 2012, as amended by Amendment No. 1 to Asset Purchase Agreement, dated December 5, 2012, and Amendment No. 2 to Asset Purchase Agreement, dated January 15, 2013 (together with all exhibits and schedules thereto, and as may be further amended); and (ii) the assumption and assignment of certain executory contracts and unexpired leases in connection therewith. The sale to Quad closed on January 16, 2013.

**B.      Background Relating to the Adversary Proceeding**

6.      On January 7, 2013, the Debtors commenced the above-captioned adversary proceeding styled Vertis Holdings, Inc., *et al.* v. Jay Schiller, Adv. Proc. No. 13-50003 (Bankr. D. Del.) (the "Adversary Proceeding"), by filing a *Complaint* [Adv. D.I. 1] (the "Complaint") against Jay Schiller ("Defendant") in this Court.

7.      Contemporaneously with the Complaint, the Debtors also filed the *Debtors' Motion for (I) Temporary Restraining Order and (II) Preliminary Injunction Pursuant*

*to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure* (the "TRO Motion"). By the TRO Motion, the Debtors sought, pursuant to rule 65 of the Federal Rules of Civil Procedure, Bankruptcy Rules 7001(7) and 7065, and section 105 of the Bankruptcy Code, a temporary restraining order enjoining Defendant from: (i) tortiously interfering with the Debtors' contractual relationships; (ii) intentionally interfering with the Debtors' ongoing business relationships; (iii) publicly disclosing false and misleading information about the Debtors; (iv) publicly disclosing highly confidential and sensitive information of the Debtors; (v) proceeding with his extortion demands on the Debtors; and (vi) violating the automatic stay provisions of section 362 of the Bankruptcy Code; and a preliminary injunction enjoining Defendant from doing the same until a hearing for a permanent injunction can be held.

8.    Pursuant to this Court's *Order Granting "Debtors' Emergency Motion to Schedule an Expedited Hearing on 'Debtors' Motion for (I) Temporary Restraining Order and (II) Preliminary Injunction Pursuant to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure'"* [Adv. D.I. 9], an emergency hearing to consider the TRO Motion and the entry of a temporary restraining order took place on January 7, 2013 at 4:00 p.m. (Eastern Standard Time) (the "Emergency TRO Hearing").

9.    At the Emergency TRO Hearing, this Court (i) considered the Complaint, the TRO Motion, the declaration of Andrew D. J. Hede filed in support of the TRO Motion (see Adv. D.I. 5), the declaration of Stephanie Stanton filed in support of the TRO Motion (see Adv. D.I. 7), and the declaration of Christopher J. Updike filed in support of the TRO Motion (see

Adv. D.I. 6); and (ii) heard and considered the statements of counsel to the Debtors in connection

with the Debtors' request for the entry of a temporary restraining order against Defendant.

10.      Based on the record of the Emergency TRO Hearing, the Court entered its

*Temporary Restraining Order* [Adv. D.I. 10] (the "TRO").  Pursuant to the TRO, this Court

granted the TRO Motion and ordered, among other things, that

> … effective immediately and subject to the terms hereof, defendant
> Schiller including his agents, attorneys, and all persons in active
> concert or participation with him, directly and indirectly, are
> hereby stayed, restrained, and enjoined from contacting the
> Debtors' customers or anyone else for the purpose of disclosing to
> them information concerning the Debtors.

See TRO at ¶ 2.

11.      Promptly following the conclusion of the Emergency TRO Hearing and

the entry of the TRO, the Debtors caused a copy of the TRO to be sent to Defendant multiple

times via e-mail and served on Defendant via Federal Express (see Adv. D.I. 13, 14 and 15).

Thereafter, on January 8, 2013, the Debtors caused a *Summons and Notice of Pretrial*

*Conference in an Adversary Proceeding* (the "Summons") in connection with the Adversary

Proceeding along with a copy of the Complaint to be served on Defendant via U.S. first class

mail.  See Adv. D.I. 12.  Moreover, on January 14, 2013, the Debtors caused personal service of

the Complaint, the Summons, the TRO Motion, the TRO, and certain other documents relative to

the Adversary Proceeding to be made on Defendant.  See Adv. D.I. 25.

12.      Subsequent to the issuance of the TRO, based on certain conduct by

Defendant that the Debtors alleged was in violation of the TRO, on January 10, 2013, the

Debtors filed the *Debtors' Motion for an Order Finding Jay Schiller in Contempt of the Court's*

*Temporary Restraining Order Pursuant to 11 U.S.C. § 105 and Rules 9014 and 9020 of the*

*Federal Rules of Bankruptcy Procedure* [Adv. D.I. 16] (the "Contempt Motion").  Pursuant to

the Contempt Motion, the Debtors sought entry of an order finding Defendant in contempt of the TRO.

13.    Pursuant to the Court's *Order Granting "Debtors' Emergency Motion to Schedule an Expedited Hearing on 'Debtors' Motion for an Order Finding Jay Schiller in Contempt of the Court's Temporary Restraining Order Pursuant to 11 U.S.C. § 105 and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure'"* [Adv. D.I. 20], an emergency hearing to consider the Contempt Motion took place before the Court on January 11, 2013 at 4:00 p.m. (Eastern Standard Time) (the "Emergency Contempt Hearing").

14.    Based on the record of the Emergency Contempt Hearing, and the evidence introduced by the Debtors and admitted by the Court at the Emergency Contempt Hearing, on January 15, 2013, the Court entered its *Order Finding Jay Schiller in Contempt of the Court's Temporary Restraining Order Pursuant to 11 U.S.C. § 105 and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure* [Adv. D.I. 23] (the "Contempt Order") finding Defendant in civil contempt of the TRO.

15.    Subsequent to the entry of the Contempt Order, the Debtors and Defendant (together, the "Parties") engaged in good faith, arm's-length discussions and negotiations to resolve the Adversary Proceeding.  Based on the Parties' discussion and negotiations, the Parties entered into that certain *Settlement Agreement*, dated January 17, 2013 (the "Settlement Agreement"), to resolve the Adversary Proceeding.  On January 22, 2013, the Debtors filed a motion with this Court seeking approval of the Settlement Agreement (see Adv. D.I. 33; the "Settlement Motion") and, on February 8, 2013, this Court entered an order approving the Settlement Agreement (see Adv. D.I. 44; the "Settlement Order").

16.    The Debtors filed a notice of dismissal of the Adversary Proceeding on February 12, 2013 in accordance with the terms of the Settlement Agreement (see Adv. D.I. 47). In response, on February 14, 2013, the Adversary Proceeding was dismissed by the Deputy Clerk of this Court.

17.    On May 22, 2013, the Court *sua sponte* entered the Order to Show Cause directing interested parties to file responses " … as to why the [Confidential/Defamatory Information] should remain under seal …" See Order to Show Cause at p. 1. In accordance with the Court's direction contained in the Order to Show Cause, the Debtors caused a copy of the Order to Show Cause to be served on Defendant and all parties requesting notice in the Main Bankruptcy Case pursuant to Bankruptcy Rule 2002 on the same date that the Order to Show Cause was entered.[4]

18.    In response to the Order to Show Cause, on June 7, 2013, Defendant filed a response to the Order to Show Cause requesting that the Confidential/Defamatory Information be unsealed. See Adv. D.I. 57 (the "Defendant's Response").

C.    **The Sealing of the Confidential/Defamatory Information**

i.    **The Initial Sealing Motion**

19.    On January 7, 2013, the Debtors filed the *Motion of Debtors for Entry of an Order Authorizing Debtors to File (I) Under Seal Declaration of Stephanie Stanton and Electronic Correspondence and (II) Redacted Versions of Complaint, Motion, and Declarations of Andrew D.J. Hede and Christopher J. Updike* [Adv. D.I. 8] (the "Initial Sealing Motion"). Pursuant to the Initial Sealing Motion, the Debtors sought entry of an order authorizing the Debtors to file (i) under seal (a) the *Declaration of Stephanie Stanton in Support of Debtors'*

---

[4] See *Affidavit of Service*, dated May 23, 2013 [Adv. D.I. 56].

*Motion for (I) Temporary Restraining Order and (II) Preliminary Injunction Pursuant to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure* (the "Stanton Declaration"), and (b) certain electronic correspondence (the "Emails") sent by Defendant to the Debtors and certain of the Debtors' representatives that is cited in the TRO Motion; and (ii) redacted versions of (a) the Complaint, (b) the TRO Motion, (c) the *Declaration of Andrew D.J. Hede in Support of Debtors' Motion for (I) Temporary Restraining Order and (II) Preliminary Injunction Pursuant to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure* (the "Hede Declaration"), and (d) the *Declaration of Christopher J. Updike in Support of Debtors' Motion for (I) Temporary Restraining Order and (II) Preliminary Injunction Pursuant to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure* (the "Updike Declaration").

20.    As argued in the Initial Sealing Motion, the information contained in the Stanton Declaration and the Emails concerns confidential commercial information regarding the Debtors' media buying business practices and the Debtors' business relationship with one of their customers (the "Customer"). Furthermore, the Emails contain untrue and defamatory statements about the Debtors and certain individuals associated with the Debtors, as established in the Stanton Declaration, and the Complaint, the Motion, the Hede Declaration, and the Updike Declaration reference the allegations contained in the Emails.

21.    Of note, notwithstanding that the Initial Sealing Motion was only filed in the Adversary Proceeding, the Debtors provided broad notice of the Initial Sealing Motion. Specifically, not only did the Debtors serve a copy of the Initial Sealing Motion on Defendant,

the Debtors also served a copy of the Initial Sealing Motion on the entire Bankruptcy Rule 2002

service list in the Main Bankruptcy Case (including, without limitation, the U.S. Trustee, counsel

to the Creditors' Committee, and counsel to Quad).[5]  Of the dozens of parties served with the

Initial Sealing Motion, none responded by the answer deadline (or thereafter, for that matter)

provided for by Local Rule 7007-1(a)(ii).  Consequently, on January 25, 2013, the Debtors filed

a certification of no objection in connection with the Initial Sealing Motion pursuant to Local

Rule 7007-4.  Thereafter, on January 28, 2013, this Court entered an order (Adv. D.I. 37, the

"Initial Sealing Order") granting the Initial Sealing Motion.  The Initial Sealing Order was

similarly served on Defendant and the entire Bankruptcy Rule 2002 service list in the Main

Bankruptcy Case.[6]

ii.      **The Second Sealing Motion**

22.      On January 10, 2013, the Debtors filed the *Motion of Debtors for Entry of*

*an Order Authorizing Debtors to File (I) Under Seal Certain Exhibits to the Declaration of Peter*

*Friedman and (II) Redact the Motion for Contempt* [Adv. D.I. 19] (the "Second Sealing

Motion").  Pursuant to the Second Sealing Motion, the Debtors sought entry of an order

authorizing them to file (i) under seal exhibits A-L and exhibits N-O (the "Friedman Exhibits")

to the *Declaration of Peter Friedman In Support of Debtors' Motion For an Order Finding Jay*

*Schiller In Contempt Of The Court's Temporary Restraining Order Pursuant To 11 U.S.C. § 105*

*and Rules 9014 and 9020 Of The Federal Rules of Bankruptcy Procedure* (the "Friedman

Declaration"), and (ii) a redacted version of the Motion for Contempt.

---

[5] See Adv. D.I. 13, 14, 15.

[6] See Adv. D.I. 38.

RLF1 8755201v.1

23.     As argued in the Second Sealing Motion, the information contained in the Friedman Exhibits concerns confidential commercial information regarding the Debtors' media-buying business practices and the Debtors' business relationship with the Customer. Furthermore, the Friedman Exhibits contain untrue and defamatory statements about the Debtors and certain individuals associated with the Debtors, as established in the Motion for Contempt, the TRO Motion, and the declarations filed in support of the TRO Motion.

24.     As with the Initial Sealing Motion, the Debtors provided broad notice of the Second Sealing Motion by serving Defendant and the entire Bankruptcy Rule 2002 service list in the Main Bankruptcy Case with a copy of the same.[7]   Again, of the dozens of parties served with the Second Sealing Motion, none responded by the answer deadline (or thereafter, for that matter) provided for by Local Rule 7007-1(a)(ii).   Consequently, on February 5, 2013, the Debtors filed a certification of no objection in connection with the Second Sealing Motion pursuant to Local Rule 7007-4.   Thereafter, on February 6, 2013, this Court entered an order (Adv. D.I. 40, the "Second Sealing Order") granting the Second Sealing Motion.   The Second Sealing Order was similarly served on Defendant and the entire Bankruptcy Rule 2002 service list in the Main Bankruptcy Case.[8]

### iii.     The Third Sealing Motion

25.     On January 22, 2013, the Debtors filed the *Motion of Debtors for Entry of an Order Authorizing Debtors to File a Redacted Copy of That Certain Settlement Agreement, Dated January 17, 2013, By and Between the Debtors and Jay Schiller in Connection With "Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 9019 for*

---

[7] See Adv. D.I. 26.

[8] See Adv. D.I. 45.

*Entry of an Order Approving That Certain Settlement Agreement, Dated January 17, 2013, By and Between the Debtors and Jay Schiller* [Adv. D.I. 34] (the "Third Sealing Motion"). Pursuant to the Third Sealing Motion, the Debtors sought entry of an order authorizing them to file a redacted version of the Settlement Agreement.

26.    As set forth in the Third Sealing Motion, the Debtors merely sought authority to redact one word --- the name of the Customer --- from the version of the Settlement Agreement publically filed with the Court.

27.    The Debtors provided broad notice of the Third Sealing Motion by serving Defendant and the entire Bankruptcy Rule 2002 service list in the Main Bankruptcy Case with a copy of the same.[9]  Again, of the dozens of parties served with the Third Sealing Motion, none responded by the answer deadline (or thereafter, for that matter) provided for by Local Rule 7007-1(a)(ii).   Consequently, on February 7, 2013, the Debtors filed a certification of no objection in connection with the Second Sealing Motion pursuant to Local Rule 7007-4. Thereafter, on February 8, 2013, this Court entered an order (Adv. D.I. 43, the "Third Sealing Order") granting the Third Sealing Motion.  The Third Sealing Order was similarly served on Defendant and the entire Bankruptcy Rule 2002 service list in the Main Bankruptcy Case.[10]

### iv.    The Fourth Sealing Motion

28.    On March 11, 2013, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Sealing Unredacted Transcripts of January 7, 2013 and January 11, 2013 Hearings and (II) Directing That Only Redacted Versions of the Transcripts of January 7, 2013 and January 11, 2013 Hearings Be Filed on the Court's Docket and Made Publically Available*

---

[9] See Adv. D.I. 35.

[10] See Adv. D.I. 46.

RLF1 8755201v.1

[Adv. D.I. 50] (the "<u>Fourth Sealing Motion</u>" and, together with the Initial Sealing Motion, the Second Sealing Motion and the Third Sealing Motion, the "<u>Sealing Motions</u>").  Pursuant to the Fourth Sealing Motion, the Debtors sought entry of an order (i) sealing the unredacted transcripts of the January 7, 2013 and January 11, 2013 (together, the "<u>Transcripts</u>") hearings in the Adversary Proceeding, and (ii) directing that only redacted versions of the January 7, 2013 and January 11, 2013 hearing transcripts be filed with the Court and be made publically available.

29.    As set forth in the Fourth Sealing Motion, the unredacted copies of the Transcripts contain references to the confidential commercial information regarding the Debtors' media-buying business practices and the Debtors' business relationship with one of their former customers that the Court has already deemed appropriate to protect from disclosure in its prior sealing orders entered in the Adversary Proceeding (<u>see</u> Adv. D.I. 37, 40).  Furthermore, the unredacted Transcripts contain references to untrue and defamatory statements, as discussed in the TRO Motion and the Contempt Motion, which again have already been afforded protection from disclosure by this Court's prior sealing orders.  In sum, the Court had already entered orders protecting the information discussed on the record of the January 7 and 11, 2013 hearings, thereby making entry of an order sealing the unredacted Transcripts appropriate.

30.    The Debtors provided broad notice of the Fourth Sealing Motion by serving Defendant and the entire Bankruptcy Rule 2002 service list in the Main Bankruptcy Case with a copy of the same.[11]    Again, of the dozens of parties served with the Fourth Sealing Motion, none responded by the answer deadline (or thereafter, for that matter) provided for by Local Rule 7007-1(a)(ii).  Consequently, on March 28, 2013, the Debtors filed a certification of no objection in connection with the Second Sealing Motion pursuant to Local Rule 7007-4.

---

[11] <u>See</u> Adv. D.I. 51.

Thereafter, on March 29, 2013, this Court entered an order (Adv. D.I. 53, the "Fourth Sealing Order" and, together with the Initial Sealing Order, the Second Sealing Order and the Third Sealing Order, the "Sealing Orders") granting the Fourth Sealing Motion. The Fourth Sealing Order was similarly served on Defendant and the entire Bankruptcy Rule 2002 service list in the Main Bankruptcy Case.[12]

## ARGUMENT

31.    Because the Confidential/Defamatory Information protected by the Sealing Orders is entitled to mandatory protection by the Bankruptcy Code, the Sealing Orders should remain in place and the Confidential/Defamatory Information should remain shielded from public disclosure.

32.    Section 107(b) of the Bankruptcy Code provides:

On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may–

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).

33.    Bankruptcy Rule 9018, which sets forth the procedure by which a party in interest may obtain a protective order authorizing the filing of a document under seal, provides, in relevant part:

On any motion or its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development or commercial information, (2) to protect

---

[12] See Adv. D.I. 54.

> any entity against scandalous or defamatory matter contained in
> any paper filed in a case under the Code . . . .

Fed. R. Bankr. P. 9018.

34.    Once the court determines that a party in interest is seeking protection of

information that falls within one of the categories enumerated in section 107(b) of the

Bankruptcy Code, "the court is required to protect a requesting interested party and has no

discretion to deny the application." Video Software Dealers Ass'n v. Orion Pictures Corp. (In re

Orion Pictures Corp.), 21 F.3d 24, 27 (2d Cir. 1994). Courts have held that protection under

section 107(b)(1) must be granted if the information sought to be protected is commercial

information and, significantly, that commercial information need not rise to the level of a trade

secret to be entitled to protection. Id. at 28 (finding that the use of the disjunctive in section

107(b)(1) "neither equates 'trade secret' with 'commercial information' nor requires the latter to

reflect the same level of confidentiality as the former"). Rather, a party seeking the protection of

section 107(b)(1) need only demonstrate that the information is "confidential" and "commercial"

in nature. Id. at 27; see also In re Global Crossing Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y.

2003) (recognizing that the purpose of Bankruptcy Rule 9018 is to "protect business entities

from disclosure of information that could reasonably be expected to cause the entity commercial

injury"). In addition, the defamation element of section 107(b)(2) protects against untrue

statements. See In re Food Mgmt. Group, LLC, 359 B.R. 543, 560 (Bankr. S.D.N.Y. 2007).

35.    Significantly, unlike its counterpart in Rule 26(c) of the Federal Rules of

Civil Procedure, section 107(b) of the Bankruptcy Code does not require an entity seeking such

protection to demonstrate "good cause." See, e.g., Video Software Dealers Ass'n v. Orion

Pictures Corp. (In re Orion Pictures Corp.), 21 F.3d 24, 28 (2d Cir. 1994); Phar-Mor, Inc. v.

Defendants Named Under Seal (In re Phar-Mor, Inc.), 191 B.R. 675, 679 (Bankr. N.D. Ohio

1995).   Here, as the Debtors articulated in detail in each of the Sealing Motions, the

Confidential/Defamatory Information was (at the time the Court approved the Sealing Motions)

and remains the type of information requiring protection under section 107(b) of the Bankruptcy

Code.   Indeed, entry of the Sealing Orders evidences that the Court agreed with the Debtors'

position that the Confidential/Defamatory Information was of the type that warrants protection

from public disclosure.[13]

36.    The Sealing Orders should also remain in place consistent with the

Settlement Agreement and the Settlement Order, both of which provide that Defendant will keep

certain of the Confidential/Defamatory Information in strict confidence.

37.    In that regard, paragraph 3 of the Settlement Agreement provides as

follows:

> As of the Effective Date, Schiller agrees that he will keep in strict
> confidence, and will not, directly or indirectly, at any time, disclose,
> furnish, disseminate, make available, use or suffer to be used in any
> manner, any of the Confidential Information[14]; provided, however, that
> the foregoing shall not preclude Schiller's disclosure of the Confidential
> Information pursuant to, or as required by, law, subpoena, judicial process
> or to any governmental agency in connection with any investigation or

---

[13] The Debtors respectfully submit that the facts that the sale to Quad closed on January 16, 2013 and that the Debtors have no ongoing business operations are irrelevant to whether or not the Confidential/Defamatory Information should remain under seal.  First, Quad purchased substantially all of the Debtors' assets for nearly $260 million.  Among the assets that Quad purchased from the Debtors were the Debtors' customer relationships and attendant goodwill.  In that regard, permitting disclosure of the Confidential/Defamatory Information at this juncture could still cause harm to Quad.  Second, the fact remains that Defendant obtained confidential, commercially sensitive information from the Customer and that information should be protected; there's no basis for its public release, as this Court concluded in connection with issuing the TRO.  Third, some of the Confidential/Defamatory Information that is subject to the Sealing Orders is defamatory in nature with respect to individual persons, including the Debtors' management and professionals.  The fact that the sale to Quad has closed in no way lessens the harm of permitting defamatory information to be released about those individuals.

[14] The Settlement Agreement defined "Confidential Information" as "… highly confidential and sensitive business information of and/or about the Debtors [provided to Defendant by the Customer] … as well as confidential information of the Customer subject to the terms of a non-disclosure agreement by and between Schiller and the Customer."  See Settlement Agreement at ¶ B.

proceeding of such agency.  Schiller specifically acknowledges that the Confidential Information includes, without limitation, any and all information, whether reduced to writing (or in a form from which information can be obtained, translated, or derived into reasonably useable form), or maintained in the mind or memory of Schiller and whether compiled or created by the Debtors or the Customer, which derives independent economic value from not being readily known or ascertainable by proper means by others who can obtain economic value from the disclosure or use of such information, that reasonable efforts have been put forth by the Debtors or the Customer to maintain the secrecy of the Confidential Information, that such Confidential Information is and will remain the sole property of the Debtors, and that any retention or use by Schiller of the Confidential Information after the Effective Date will constitute a misappropriation of the Confidential Information.

<u>See</u> Settlement Agreement at ¶ 3.

38.    In turn, paragraph 3 of the Settlement Order (which approved the Settlement Agreement) provides:

The Debtors and Schiller are authorized and **directed** to execute, deliver, implement, and **fully perform any and all obligations,** instruments, documents, and papers and to **take any and all actions reasonably necessary** or appropriate to consummate and fully execute the Settlement Agreement and **effectuate its terms.**

<u>See</u> Settlement Order at ¶ 3 (emphasis supplied).  Consequently, the Settlement Agreement further obligates Defendant to keep certain of the Confidential/Defamatory Information strictly confidential, and the Sealing Orders should remain in place commensurate with the Parties' obligations under the Settlement Agreement.  Indeed, as the Debtors noted in their motion seeking approval of the Settlement Agreement, "… the Settlement Agreement (i) protects the confidentiality of the Confidential Information in perpetuity …" <u>See</u> Settlement Motion at ¶ 27.

39.    Finally, although Defendant, in the Defendant's Response, "… request[s] that the documents listed in correspondence dated May 22, 2013 [i.e., the Show Cause Order] regarding Case No. 12-12821 and Adv Pro No. 13-50003 (CSS) be unsealed as of June 25, 2013

RLF1 8755201v.1

and filed publically on the Court's document [sic]," Defendant (i) cites no authority for unsealing the Confidential/Defamatory Information, (ii) identifies no harm to him caused by leaving the Confidential/Defamatory Information under seal, and (iii) makes no argument whatsoever that it would be improper to maintain the Confidential/Defamatory Information under seal.  To the contrary, as the Debtors have recited in the Sealing Motions and herein, there are ample justifications for maintaining the Confidential/Defamatory Information under seal, including, without limitation, potential harm to Quad and various individuals by permitting the Confidential/Defamatory Information to be unsealed.  As such, for all of the foregoing reasons, the Debtors respectfully submit that the Sealing Orders should remain in place and the Confidential/Defamatory Information should remain protected from public disclosure.

WHEREFORE, the Debtors respectfully request that the Court (i) maintain the Confidential/Defamatory Information under seal consistent with the Court's prior Sealing Orders; (ii) overrule the Defendant's Response; and (iii) grant the Debtors such further relief as the Court deems just and proper under the circumstances.

RLF1 8755201v.1

Dated:    June 17, 2013
          Wilmington, Delaware

                                    Mark D. Collins (No. 2981)
                                    Jason M. Madron (No. 4431)
                                    RICHARDS, LAYTON & FINGER, P.A.
                                    One Rodney Square
                                    920 North King Street
                                    Wilmington, Delaware 19801
                                    Telephone:  (302) 651-7700
                                    Facsimile:  (302) 651-7701

                                    - and -

                                    Israel Dahan (admitted *pro hac vice*)
                                    Christopher J. Updike (admitted *pro hac vice*)
                                    CADWALADER, WICKERSHAM & TAFT LLP
                                    One World Financial Center
                                    New York, New York 10281
                                    Telephone:  (212) 504-6000
                                    Facsimile:  (212) 504-6666

                                    *Attorneys for the Debtors*
                                    *and Debtors in Possession*

RLF1 8755201v.1